UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN E. HOMRICH,

    Plaintiff,

v.                                                  Case No. 1:12-cv-445

                                                  Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on November 17, 1963 (AR 121).[1] He alleged a disability onset date of March 15, 2007 (AR 121). Plaintiff earned a GED and had previous employment as an assembler (in an acoustics company and later in an automobile factory), a hi-lo driver and laborer (AR 127, 132). He identified his disabling conditions as sleep apnea, back problems and pinched nerves (AR 126). Plaintiff asserted that he cannot stand or sit too long due to back pain, due to the sleep apnea he falls asleep without realizing it, and he sometimes wakes up with burning pain in his legs and cannot walk very far (AR 126). On November 15, 2010, an ALJ reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 14-21). This decision, which was later

---

[1] Citations to the administrative record will be referenced as (AR "page #").

approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

The ALJ found that plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of March 15, 2007 and met the insured status requirements of the Act through December 31, 2010 (AR 16). At step two, the ALJ found that through the date last insured, plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine; herniated discs; and sciatica (AR 16). At step three, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 17).

The ALJ decided at the fourth step that:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant is restricted to unskilled work occurring in a clean-air environment. He is limited to only occasional bending, twisting, turning, climbing and crawling and no prolonged walking.

(AR 17). The ALJ further found that plaintiff was unable to perform any past relevant work (AR 20).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the national economy (AR 20-21). Specifically, plaintiff could perform the following jobs in the regional economy (lower peninsula of Michigan): surveillance systems monitor (650 jobs); dressing clerk (670 jobs); and assembler (3,000 jobs) (AR 21). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social

Security Act, at any time from March 15, 2007 (the alleged onset date) through November 15, 2010 (the date of the decision) (AR 21).

### III. ANALYSIS

Plaintiff has raised two issues on appeal.

**A. Although the ALJ relied upon vocational witness testimony in concluding that plaintiff was not disabled, the vocational witness' testimony cannot serve as substantial evidence because the ALJ's RFC determination was more restrictive than any of the hypothetical questioning.**

Plaintiff points out that while the ALJ's residual function capacity (RFC) limited his activities "to only occasional bending, twisting, turning, climbing and crawling and no prolonged walking" (AR 17), the ALJ's hypothetical question posed to the vocational expert (VE) at step five of the sequential evaluation omitted the restriction to climbing and crawling (AR 46). Plaintiff contends that the hypothetical question is flawed and that the VE's response to the question cannot serve as substantial evidence to support the ALJ's determination that plaintiff can perform other work in the national economy. The court agrees.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. A hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d

228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnose. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

Here, the ALJ's hypothetical question did not include all of the limitations which the ALJ found credible, because it omitted postural limitations which were part of plaintiff's RFC, i.e., only occasional climbing and crawling.[2] The ALJ's failure to include these additional limitations is not harmless error. The record reflects that in response to this hypothetical question, the VE identified 4,220 jobs which the plaintiff could perform. It is possible that this number of jobs could be reduced if the hypothetical person had the additional postural limitations of only occasional climbing and crawling. If this number of jobs is reduced significantly, then it could result in a determination that there is not other work in the national economy that plaintiff can perform. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of the vocational evidence. On remand, the Commissioner should obtain vocational evidence based upon plaintiff's RFC, which includes only occasional climbing and crawling.

---

[2] RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments, 20 C.F.R. §§ 404.1545, 416.945, and is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen v. Secretary of Health and Human Services*, 964 F.2d 524, 530 (6th Cir. 1992).

**B.  The ALJ provided no evidentiary support for the
RFC determination and failed to properly evaluate
and weigh the opinion evidence of record.**

**1. The ALJ provided no evidentiary support for the RFC determination**

Plaintiff contends that the ALJ provided only a "cursory review" of the objective evidence and did not properly explain the evidentiary basis for the RFC determination. Contrary to plaintiff's contention, the ALJ performed an extensive review of the medical evidence in this case, providing in pertinent part as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The claimant alleged disability based upon lower back and leg pain. Although the claimant has received treatment for these impairments, a review of the objective medical findings fails to find strong support for the claimant's allegations of disabling symptoms and allegations. The records reveal that the claimant was involved in a motor vehicle accident in 2004. Although he was not employed at the time of the accident, he subsequently acquired a job. (Exhibit 18F/2). He worked without functional restrictions until he was laid off on March 20, 2007. (Exhibit l8F/4). During this period, he claimed that he began to experience increasing low back pain and a burning sensation in his left leg, which led him to seek treatment from his primary care physician, Kristopher L. Brenner, DO. He was prescribed Vicodin, Flexiril and Ibuprofen. (Exhibit 5F). A MRI of his lumbar spine dated May 2, 2007, showed disc herniations at L3-4, L4-5 and L5-S1 with possible nerve root impingement accompanied by facet joint degenerative changes with an associated synovial cyst at L3-L4. (Exhibit 2F/l-2).
>
> Thereafter, he was referred to Dr. Timothy Spencer, a neurosurgeon. During his consultation on July 24, 2007, the claimant complained of pain in his lower lumbar region, which ranged from mild to severe. He reported that his pain was exacerbated by physical activity, working and sitting. He also complained of numbness in his right lower extremity. (Exhibit 4F/l). Upon physical examination, the claimant had an abnormal gait and exhibited difficulty with heel and toe walking and squatting. He had tenderness to palpitation in the posterior region of his lumbar spine, a decreased range of motion and muscle spasms. Nevertheless, lumbar spine nerve root provocation testing was negative, as was additional spinal testing.

7

Moreover, the neurological examination of his upper and lower extremities was unremarkable and his motor sensation and reflexes were normal. Further, he had full range of motion in his lower extremities. (Exhibit 4F/3). Accordingly, Dr. Spencer recommended that the claimant undergo pain management and spinal manipulation, commence physical therapy and a home exercise program, and continue to take his prescribed medications. (Exhibit 4F/4). Although he offered a guarded assessment regarding a L5-S1 discectomy, Dr. Spencer suggested surgery if the claimant's conservative treatment measures were unsuccessful. (Exhibit 3F/5).

The claimant began physical therapy and experienced improvement. (Exhibit 5F/12). Although he complained of numbness in his right thigh during an October 2007 appointment, it was noted that he had a normal range of motion, gait, reflexes and muscle strength. (Exhibit 5F/32). In March 2008, the claimant was evaluated by Dr. Andrew Barker, who noted that the claimant had normal motor strength and range of motion in his lower extremities. (Exhibit 6F18). Dr. Barker recommended ongoing physical therapy and prescribed a Medrol Doespak in addition to his pain relievers. (Exhibit 6F/9). Thereafter, the claimant intermittently complained of back pain and continued to treat with Dr. Brenner. Nonetheless, treatment notes indicate that his range of motion was only moderately restricted and that he continued to present with a normal gait and reflexes. (Exhibits; 14F-15F). Further, it was noted that the claimant experienced pain relief with medication. (Exhibits 14F/27).

On October 15, 2010, the claimant underwent an independent medical evaluation with Ramin Rahimi, DO. The claimant complained of numbness and tingling in his right lateral thigh. (Exhibit 18F/5). Upon physical examination, the claimant had tenderness to palpitation across the lower lumbar spine. Although straight leg raising was associated with low back pain, there was no pain below the knee. He did not exhibit joint instability and muscle testing using the medical research grading council was 4- of the abdominal and back extensors and 4+ at hip flexors, knee extensors, ankle plantar and dorsiflexors. (Exhibit 18F/6). Moreover, sensation was fully intact, reflexes were symmetrical and he ambulated independently. Accordingly, Dr. Rahimi opined that the claimant would be able to perform sedentary work but would be limited in reaching above and below the shoulder, bending, stooping, kneeling and squatting and would require frequently rest periods. (Exhibit 18F/7-8). He also completed a functional capacity assessment indicating that the claimant could sit for three to four hours, stand for two to three hours, and walk for one to two hours throughout an eight-hour work day but would likely be absent for more than four days per month due to his impairments. As such, Dr. Rahimi concluded that almost all work related activities were affected by the claimant's impairments. (Exhibit 19F). Thus, Dr. Rahimi's opinions are inconsistent, such that his summary of the claimant's evaluation indicates that the claimant can perform sedentary work, while his functional capacity form suggests that the claimant is unable to work. The claimant's treating records indicate that the claimant has experienced improvement in regards to his condition and do not support

8

a finding that the claimant is disabled. Accordingly, the undersigned affords significant weight to Dr. Rahimi's opinion that the claimant is capable of doing sedentary work and finds his functional capacity assessment unpersuasive and contrary to the objective evidence.

In regards to the remaining opinion evidence, Dr. Brenner indicated in June 2009 that the claimant could not return to his previous positions as a hi-lo driver, stocker or material handler because he was unable to lift more than ten pounds and could not work overhead, kneel, squat or rotate. (Exhibit 14F/27). However, in March 2010, the claimant's condition had apparently improved, as Dr. Brenner reported that the claimant felt as if he was able to return to his position as a hi-lo driver, an assessment with which Dr. Brenner apparently agreed. (Exhibits 5F/1; 14F/27; 16F/28). Accordingly, great weight is afforded to Dr. Brenner's assessment that the claimant is able to work a sedentary position. Further, the undersigned notes the Dr. Brenner did not indicate in June 2009 that the claimant was unable to perform any work; rather, he reported that the claimant was unable to return to his previous positions. Additionally, great weight is afforded to the opinion of the State agency medical consultant who opined that the claimant was not disabled as it is consistent with the medical record as a whole. (Exhibits 8F; 9F).

In sum, the objective medical evidence does not support the claimant's allegation that suffers from disabling limitations. Further suggesting that the claimant's symptoms may not be as limiting as the claimant has alleged is his testimony that he continued to look for work throughout his alleged period of disability. As such, the residual functional capacity is generally consistent with and not significantly less restrictive than the limitations identified in the medical evidence in the record. While the claimant is restricted as to the types of work that he is capable of performing, the objective medical evidence fails to establish that his impairments are of sufficient severity to preclude his ability to perform jobs consistent with the aforementioned residual functional capacity. Accordingly, the evidence fails to reasonably support the level of limitations as described by the claimant.

(AR 17-19).

The record reflects that the ALJ reviewed the objective medical evidence and explained his reasoning in making the RFC determination. Plaintiff's claim of error is not borne out by the record and should be denied.

9

## 2. The ALJ failed to properly evaluate opinion evidence

Plaintiff contends that the ALJ misstated various portions of the opinions expressed by plaintiff's treating physician, Dr. Brenner, and an examining physician, Dr. Rahimi. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). If a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case," then the agency will give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2) . An ALJ, however, is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen*, 964 F.2d at 528. In summary, the

opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d at 287.

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff contends that the ALJ mischaracterized Dr. Brenner's opinions because, contrary to the ALJ's decision, Dr. Brenner never found that plaintiff was able to work in a sedentary position (AR 19). The Court disagrees. In a progress note from February 27, 2008, Dr. Brenner stated "[plaintiff] feels that he is not able to return to work and I agree at this time" (AR 197). However, by June 8, 2009, Dr. Brenner found that plaintiff could perform work with some restrictions:

> I feel motions such as lifting > 10 lbs and 10 lbs of torque pressure, overhead work, squatting, kneeling, rotation are severely limited. I find John Homrich is a 45 y.o. male unable to work 8 hours a day 40 hours a week per his former Hi-lo drive [sic], stocking and lift materials that exceed this description.

(AR 380). These restrictions, i.e., lifting 10 pounds or less, are consistent with the ability to perform a range of sedentary work. *See* 20 C.F.R. §§ 404.1567(a) and 416.967(a) ("[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools").

Then, on March 3, 2010, Dr. Brenner made the following note:

> [A]s I leave the day he hands me a disability form from 2007. He has been unable to work as a hi lo driver, material handler and stocker due to lower back lumbar pain and DJD. He feels at this time he is able to return to the capacity to sit and drive hi-lo but not stock nor handle materials. See forms for details. [In] the future more than immediate notice is needed to properly fill out forms for him.

11

(AR 514). The Court agrees with plaintiff that this note is ambiguous as to whether the doctor agreed with the extent of plaintiff's limitations. Nevertheless, this note is evidence which contradicts plaintiff's claim that he is totally disabled and incapable of performing even sedentary work. Based on the foregoing, it appears that in June 2009, Dr. Brenner opined that plaintiff could perform some type of sedentary work, and that by March 3, 2010, plaintiff himself felt that he could perform some sedentary work (i.e., he could sit and drive a hi-lo). Contrary to plaintiff's claim, the ALJ did not improperly evaluate Dr. Brenner's opinions.

Finally, plaintiff contends that the ALJ gave "extremely vague and unsupported reasoning for the weight assigned to each of [Dr. Rahimi's] opinions." Plaintiff's Brief at p. 6. Plaintiff's contention is without merit. Because Dr. Rahimi was a nontreating source, the ALJ was not required to articulate any reasons for the weight he accorded the doctor's opinions. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 875-76 (6th Cir. 2007) (the Social Security Agency requires ALJ's to give reasons only for treating sources, citing 20 C.F.R. § 404.1527(d)(2); "the procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are"). Accordingly, plaintiff's claim of error should be denied.

### IV.  Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for re-evaluation

of the vocational evidence. On remand, the Commissioner should obtain vocational evidence based

upon plaintiff's RFC, which includes only occasional climbing and crawling.


Dated:  August 30, 2013                             /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).